UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

—————————————————————————

LARRY B. COFFIE,

                  Plaintiff,

        V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,[1]

                  Defendant.

—————————————————————————

**REPORT AND
RECOMMENDATION**

07-CV-818
(LEK/VEB)

## I. INTRODUCTION

In February of 2005, Plaintiff, Larry B. Coffie filed an application for Supplemental Security Disability Insurance ("SSDI") benefits under the Social Security Act.  Plaintiff alleges that he has been unable to work since September 2, 2004, primarily due to progressive pain and other symptoms following an operation for removal of his kidney, herniated discs, and degenerative disc disease of his cervical and lumbar spine.  Plaintiff's application for benefits was denied by the Commissioner of Social Security.

Plaintiff, through his attorneys, Conboy, McKay, Bachman & Kendall, LLP, Peter L. Walton, Esq., of counsel, commenced this action on August 10, 2007, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's denial of SSDI benefits pursuant to 42 U.S.C. §§ 405 (g).

—————————————————

[1]Michael J. Astrue was sworn in as the Commissioner of Social Security on February 12, 2007. The Clerk of the Court is hereby directed to substitute Commissioner Astrue in place of his predecessor, Jo Anne B. Barnhart, as the defendant in this action pursuant to Rule 25 (d)(1) of the Federal Rules of Civil Procedure.

On March 19, 2009, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 12).

For the reasons set forth below, this Court finds no reversible error and finds that substantial evidence supports the ALJ's decision.  Thus, the Court recommends that the decision of the Commissioner be affirmed.

## II. BACKGROUND

The relevant procedural history may be summarized as follows.  Plaintiff applied for SSDI benefits on February 10, 2005, alleging that he had been unable to work since September 2, 2004.  (T[2] at 16, 37).  The application was denied on May 16, 2005. (T at 53-56).  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on July 14, 2005.  (T at 16).  On October 5, 2006, Plaintiff appeared with his attorney, Peter Walton, Esq., at a hearing before ALJ Elizabeth Koennecke.  (T at 294). Plaintiff and his attorney appeared via video conference from Watertown, New York.  ALJ Koennecke conducted the hearing in Syracuse, New York.  (T at 16).

On January 25, 2007, the ALJ issued a written decision denying Plaintiff's application for benefits.  (T at 16-26).  ALJ Koennecke's decision became the Commissioner's final decision on June 15, 2007, when the Appeals Council denied Plaintiff's request for review.  (T at 4-7).

Plaintiff commenced this action on August 10, 2007. (Docket No. 1).  Plaintiff,

---

[2]Citations to "T" refer to the Administrative Transcript.  (Docket No.7).

through counsel, filed a supporting Brief on January 8, 2008. (Docket No. 9).   The Commissioner filed a Brief in opposition on February 1, 2008. (Docket No. 10).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

### III. DISCUSSION

#### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct.

---

[3]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in

4

substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ determined that Plaintiff met the insured status requirements of the Act and had not engaged in substantial gainful activity at any time relevant to the decision.  (T at 18).  Further, the ALJ found that Plaintiff has two  impairments (cervical degenerative disc disease with radiculopathy and degenerative joint disease of the lumbosacral spine) considered "severe" under the applicable Social Security Act Regulations (the "Regulations").  (T at 18).  However, the ALJ determined that Plaintiff's medically determinable impairments did not meet or equal one of the impairments listed in Appendix I of the Regulations. (T at 22).

After reviewing the medical evidence, the ALJ concluded that Plaintiff "has the residual functional capacity to [perform] a wide range of light work activity." (T at 22).  The ALJ found that Plaintiff can lift or carry twenty (20) pounds occasionally, ten (10) pounds frequently, can stand or walk about six (6) hours in an eight hour work day, and sit about six (6) hours in an eight hour work day.  (T at 22-23).  In addition, the ALJ determined that Plaintiff is unlimited with respect to "pushing and pulling as shown for lifting and carrying," but "should avoid hazardous conditions." (T at 23).

The ALJ found that Plaintiff is unable to perform his past relevant work as a mill worker.  (T at 25).  However, the ALJ found that Plaintiff, based on his residual functional capacity, age, education, and work experience, can perform jobs that exist in significant numbers in the national economy.  (T at 26).  Accordingly, the ALJ concluded that Plaintiff is not under a "disability," as that term is defined under the Act, and denied the application

for benefits. (T at 26).

As noted above, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.  (T at 4-7).

**2.      Plaintiff's Claims**

Plaintiff contends that the Commissioner's decision should be reversed.  He offers six principal arguments in support of his position.   First, Plaintiff argues that the Commissioner erroneously failed to find that Plaintiff's back impairment meets listing 1.04(A) and that he is entitled to a finding that he is disabled.  Second, he asserts that controlling weight should have been afforded to his treating physician's opinion.  Third, Plaintiff asserts that the Commissioner failed to properly assess the severity of his conditions.   Fourth, he argues that the Commissioner failed to properly determine his residual functional capacity.   Fifth, Plaintiff asserts that the Commissioner erroneously failed to find that the medical vocational guidelines direct a finding of disabled for a person of plaintiff's age, education, and past relevant work experience. Sixth and finally, Plaintiff argues that the Commissioner failed to properly evaluate his subjective allegations of pain and disabling symptoms.  This Court will address each argument in turn.

**a.      Listing 1.04 (A)**

Plaintiff contends that his impairments meet or equal the spine disorder impairment identified in § 1.04A, 20 C.F.R. Part 404, Subpart P, Appendix 1 (commonly referred to as "the Listings"). If a claimant suffers from an impairment or combination of impairments that meets or medically equals one of the impairments contained in the Listings, the claimant will be considered disabled.

Listing 1.04A provides as follows:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A.      Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); ....

20 C.F.R. Pt. 404, Subpt. P, App. 1.

It is undisputed that Plaintiff suffers from mild to moderate narrowing of the central canal at C3-C4 (T at 153-54) and limitation of motion of the spine. (T at 202). However, there is limited evidence suggesting that Plaintiff suffers from motor loss with muscle weakness. Dr. Abdul Latif, Plaintiff's treating neurologist, noted normal muscle tone and no motor weakness on at least two occasions. (T at 179, 182). Plaintiff references Dr. Latif's report of February 28, 2005, in which Dr. Latif noted that Plaintiff was experiencing "weakness" in his upper extremities. (T at 182). However, this portion of the report referenced Plaintiff's subjective complaints. In his objective findings, Dr. Latif stated that "motor examination [did] not show any focal motor weakness in . . . upper or lower extremities." (T at 182). Likewise, the Progress Notes from the Samaritan Medical Center from September 2004 appear to reference subjective complaints, rather than objective evidence. (T at 193). Further, although Dr. Moon, Plaintiff's treating physician, noted "[m]ildly decreased sensation of light touch of the right lower L5 dermatone," he also found that Plaintiff's muscle strength in upper and lower extremities bilaterally was within normal

8

limits.  (T at 232).  Lastly, while a physical therapy evaluation indicated diminished muscle strength (T at 258), a physical therapist's opinion is not considered a "medical opinion" under the Act.  The Regulations provide that "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of ... impairment(s)...." Diaz v. Shalala, 59 F.3d 307, 313 (2d Cir.1995)(citing 20 C.F.R. § 404.1527(a)(2)). C.F.R. § 404.1513(a) lists five categories of "acceptable medical sources," none of which references physical therapists. Rather, physical therapists are listed in a different section as "other sources" whose "[i]nformation ... may ... help us to understand how [the] impairment affects your ability to work." Id. (citing 20 C.F.R. § 404.1513(e) (1994)).  Accordingly, the ALJ was not bound to accept the physical therapist's opinion regarding muscle strength.

In addition and in the alternative, Plaintiff has not provided sufficient evidence of a positive straight-leg raising test (sitting and supine), as required to meet Listing § 1.04.  In April 2005, Dr. Latif noted a positive straight leg raising test "on the right." (T at 272). However, Dr. Latif did not indicate whether he had performed the test in both the sitting and supine positions, as required under the Regulations.  Dr. Ami C. Milton performed a rheumatology consultive examination and prepared a January 2006 report indicating a negative straight leg raising test.  (T at 255).

"Conflicts in evidence . . . are for the Commissioner to resolve. White v. Comm'r of Social Security, No. 06-CV-0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) (citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir.1983)). Where, as here, there are conflicts in the medical evidence, it is the ALJ's decision that controls as factfinder. Id. Where the Commissioner's decision "rests on adequate findings supported by evidence

9

having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." Id. (citing Veino v. Barnhart, 312 F.3d at 586). While Plaintiff has some of the symptoms associated with a listed impairment, the ALJ's finding that Plaintiff did not have a listed impairment is supported by substantial evidence.

### b.    Treating Physician

Plaintiff also argues that the ALJ improperly discounted the opinion of his treating physician.  Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[4]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998).

---

[4]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

In the present case, Plaintiff contends that the ALJ should have afforded controlling weight to the opinions of Dr. Moon, Plaintiff's primary care physician.  Dr. Moon opined on several occasions that Plaintiff was unable to work and temporarily disabled (T at 127, 130, 137) and ultimately concluded that he was permanently disabled. (T at 211).

A statement by a treating physician that an individual is disabled is not, by itself, controlling, as the determination of disability is a matter reserved to the Commissioner.  20 C.F.R. § 404.1527 (e)(1); Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999).  In the instant case, the ALJ was not bound to accept Dr. Moon's disability determination. Moreover, the ALJ's decision not to afford controlling weight to Dr. Moon's opinion concerning the severity of Plaintiff's impairments was supported by substantial evidence.

Even Dr. Moon's own treating notes indicated that Plaintiff was independent in his activities of daily living (T at 135, 237) and "doing very well" on pain medication (T at 135). Further, Dr. Latif, Plaintiff's treating neurologist, noted on numerous occasions that Plaintiff did not appear to be in any discomfort, had normal posture, and only "mild" tenderness in his cervical and lumbar spines.  (T at 178-82).  A consulative examination was conducted by Dr. Kalyani Ganesh in April 2005.  (T at 202).  Dr. Ganesh concluded that Plaintiff had no gross limitation as to sitting, standing, walking, and climbing and only mild to moderate limitation as to lifting, carrying, pushing, and pulling.  (T at 203).  State Agency physician Sury Putcha reviewed the medical evidence and concluded that Plaintiff could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk for about 6 hours in an 8 hour work day, sit with breaks for about 6 hours in an 8 hour work day, and had no limitations as to pushing or pulling.  (T at 206).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining

11

and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Such reliance is particularly appropriate where, as here, the opinions of these examining and non-examining State agency medical consultants  are supported by the weight of the evidence.  See Brunson v. Barnhart, 01-CV-1829, 2002 WL 393078, at *14 (E.D.N.Y. Mar. 14, 2002) (holding that opinions of non-examining sources may be considered where they are supported by evidence in the record).

It is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record. See Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1971). Under the circumstances presented in this case, it cannot be said that the ALJ disregarded the medical evidence from Plaintiff's treating physicians and State agency examiners and instead substituted her lay opinion for competent medical evidence.  As such, this Court finds that the ALJ's decision should be affirmed.

### c.    Severity of Kidney Impairment

Plaintiff asserts that the ALJ failed to properly assess the severity of his kidney impairment.  On September 23, 2003, Plaintiff complained of left lower quadrant pain and blood in his urine (hematuria).  (T at 102).  A CT scan conducted a week later revealed a

cystic mass on Plaintiff's right kidney, which was subsequently removed.  (T at 141, 163, 173).  He was thereafter periodically treated for hematuria and right flank pain.  (T at 108, 114, 254).  Dr. Richard Matarese, a nephrologist, treated Plaintiff and noted that Plaintiff suffered from renal insufficiency.  (T at 215).

The ALJ considered the medical records and determined that Plaintiff's kidney impairments were not severe.  A finding of not severe is appropriate when an impairment, or combination of those impairments "does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).

"Basic work activities" include ... walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations. Gibbs v. Astrue, 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5). The claimant bears the burden of proof as this issue. Miller v. Comm'r of Social Sec., 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a).

While courts have generally held that this step is limited to "screen[ing] out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, itself, sufficient to deem a condition severe. Coleman v. Shalala, 895 F.Supp. 50, 53 (S.D.N .Y.1995). "A finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, 97-CV-5759, 1999

WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting Bowen v. Yuckert, 482 U.S. 137, 154 n. 12 (1987)).

In the present case, the ALJ's determination with regard to Plaintiff's kidney condition was supported by substantial evidence. Plaintiff did not initially identify his kidney impairment as a disabling condition. (T at 62). In February 2004, Dr. Moon treated Plaintiff for pain and hematuria, but noted that Plaintiff continued to work through the symptoms. (T at 108). Later that month, Plaintiff vacationed in Florida and upon his return, Dr. Moon noted that Plaintiff was "doing quite well" and had "no complaints of significant pain." (T at 112). A CT scan conducted in that same month showed an unremarkable left kidney, no right kidney, and normal cavity ("fossa"). (T at 213). A urinalysis conducted in June 2004 was normal, with no protein or blood in the urine. (T at 215). The alleged onset of disability was September 2, 2004, nearly a year after the removal of Plaintiff's kidney. (T at 63). While the record indicates that Plaintiff suffered from periodic pain, hematuria, and renal insufficiency, there is no clear indication that Plaintiff's kidney condition significantly limits his ability to perform basic work activities.

Accordingly, this Court finds that substantial evidence exists to support the ALJ's determination regarding the severity of Plaintiff's kidney impairment.

### d.   Determination of Residual Functional Capacity

Plaintiff notes that his primary care physician, Dr. Moon, opined that Plaintiff is permanently disabled due to chronic pain. (T at 137, 211). The ALJ concluded that Plaintiff was capable of performing light work involving lifting up to 20 pounds and sitting, standing, or walking six hours in an eight hour workday. (T at 22). Plaintiff challenges the ALJ's determination regarding his residual functional capacity, arguing (as above) that Dr. Moon's

14

opinion was entitled to controlling weight.

Residual functional capacity is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).

For the reasons set forth above, this Court finds that the ALJ's decision in this regard was supported by substantial evidence. The ALJ's finding with respect to Plaintiff's residual functional capacity is supported by the determinations of consultative examiner Dr. Ganesh, State Agency physician Dr. Putcha, and by the indications in the treating physicians' records to the effect that Plaintiff's pain appeared to be managed by medication. In sum, the ALJ's determination at the fifth step of her analysis that Plaintiff had the residual functional capacity to perform light work, and therefore was not entitled to disability insurance benefits, is supported by substantial evidence.

### e.    Consideration of Medical Vocational Guidelines

Plaintiff asserts that the Medical Vocational Guidelines dictate a finding that he is disabled.

At step 5 in the sequential evaluation, the ALJ was required to perform a two part

15

process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). In this, and other social security cases, the second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

16

In the present case, the ALJ determined that Plaintiff could perform a full range of light work.  Thus, considering Plaintiff's age, education, and work experience, the ALJ consulted the applicable Medical-Vocational Rules, namely Rules 202.11 and 202.12, and determined that a finding of "not disabled" was warranted.  These Rules apply to a claimant, such as Plaintiff, capable of performing light work, with limited education and closely approaching advanced age (51 years old), regardless of whether the claimant has transferrable job skills, given the consensus among the examining and non-examining State agency medical consultants concerning the severity of claimant's impairments. Plaintiff argues that a finding of disability was mandated by Rule 201.10 of the Grids. However, that Rule specifically applies only to a claimant with a residual functional capacity for sedentary work.  Because the ALJ determined that Plaintiff was capable of light work, Rule 201.10 was inapplicable by its own terms and Plaintiff's argument in this regard is unavailing.

### f.    Subjective Allegations

Plaintiff contends that the ALJ erroneously failed to evaluate his subjective allegations of pain and disabling symptoms.

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an

17

underlying condition could reasonably be expected to produce the symptomatology alleged.

See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR

96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain

after weighing the objective medical evidence in the record, the claimant's demeanor, and

other indicia of credibility, but must set forth his or her reasons with sufficient specificity to

enable us to decide whether the determination is supported by substantial evidence." Lewis

v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted). To this end, the

ALJ must follow a two-step process to evaluate Plaintiff's contention of pain, set forth in

SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if

Plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must

consider the following factors in order to make a determination of Plaintiff's credibility

concerning his pain:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;

18

> 7.    Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds Plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

In the present case, the ALJ concluded that Plaintiff's complaints of disabling pain were not fully credible.  This conclusion was amply supported by the record and the ALJ provided a detailed explanation for her decision.  Plaintiff testified that he went hunting once or twice a week, hunting various animals, including birds and deer.  (T at 306-307).  He procured a hunting license for 2006, some two years after the alleged onset of disability and spent up to four hours hunting in a given day.  (T at 307).  Plaintiff performed household tasks such as preparing dinner, cleaning, mowing the loan, and doing laundry. (T at 73-75, 76).  Plaintiff stated that he had no problem paying attention or following instructions.  (T at 77).

In light of the foregoing and the record medical evidence, the ALJ was acting well within her discretion when she determined that Plaintiff's complaints were "not entirely credible."  Plaintiff correctly notes that his credibility was enhanced by his work history (thirty-one years with the same employer).  See Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983).  However, it appears that the ALJ did take that into consideration when she concluded that Plaintiff was not able to perform his past relevant work as a mill worker.  In other words, the ALJ did not reject Plaintiff's complaints of disabling pain completely, but

19

rather concluded that the allegations could not be "accepted on their face[,] at least not to the extent alleged . . . ." (T at 24).

In sum, the Court finds the ALJ properly considered Plaintiff's pain and reported limitations, along with the medical and other evidence in the record, and further finds the totality of evidence does not substantiate Plaintiff's claim that his pain and other symptoms were disabling. Accordingly, the ALJ exercised her discretion to evaluate the credibility of Plaintiff's testimony, presented a summary of her evaluation, and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir.1984).  The ALJ's decision should therefore be upheld.

## IV. CONCLUSION

After carefully examining the administrative record, this Court finds substantial evidence supports the ALJ's decision, including the objective medical evidence and supported medical opinions. It is clear to this Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating physicians, and afforded Plaintiff's subjective claims of pain and other limitations an appropriate weight when rendering her decision that Plaintiff is not disabled. This Court finds no reversible error.  Because the Court further finds that substantial evidence supports the ALJ's decision, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be GRANTED, that Plaintiff's Motion for Judgment on the Pleadings be DENIED, and that the decision of the Commissioner be affirmed.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   May 11, 2009

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**

21

Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

May 11, 2009

Victor E. Bianchini
United States Magistrate Judge